IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEPHEN BRIANAS,      *

    *Plaintiff,*      *

v.      *     Civil No. RDB-17-02928

UNDER ARMOUR, INC.      *

    *Defendant.*      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Stephen Brianas has filed suit against Defendant Under Armour Inc. under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"); the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.* ("MWHL"); and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq.* ("MWPCL"). (Compl., ECF No. 1.) Mr. Brianas alleges that Under Armour violated these statutes by classifying its analysts as salaried employees in order to avoid overtime wage requirements. (*See id.* at ¶¶ 80-82.)

Now pending before the Court is Plaintiff's Motion for Conditional Certification of a Collective Class and to Facilitate Identification and Notice to Similarly Situated Employees ("Motion for Conditional Certification"). (ECF No. 7.)[1] The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below,

---

[1] The Plaintiff has not proposed a specific notice plan. Rather, he requests that this Court direct the parties to confer with each other to determine if they can agree to the terms of notice. Given this Court's holding, *see infra*, no such order is warranted.

1

Plaintiff's Motion for Conditional Certification (ECF No. 7) is DENIED, and this case will proceed as an individual claim under the FLSA, MWHL, and MWPCL.

## BACKGROUND

Defendant Under Armour, Inc. ("Defendant" or "Under Armour") is a global manufacturer of athletic apparel headquartered in Baltimore, Maryland. (ECF No. 15 at 3.) Under Armour maintains four separate divisions: Brand House, Warehouse, E-Commerce, and Distribution House. (*Id.*) From 2011 until April 7, 2017, Plaintiff Stephen Brianas ("Plaintiff" or "Mr. Brianas") worked as an allocation analyst ("analyst") in the Brand House division. (Brianas Decl., Pl. Ex. A at ¶ 4, ECF No. 7-2.) Plaintiff asserts that his duties "centered on routine data entry" related to the allocation of store inventory. (Pl. Mem. at 2, ECF No.7-1.) He alleges that during his tenure, one to three analysts also worked in Brand House. (ECF No. 7-2 at ¶ 4.)

Defendant notes that the "Action Plan" for Mr. Brianas dated December 2, 2016 indicates multiple performance issues, which resulted in a Performance Improvement Plan. (*See* Def. Exhibits G-H, ECF Nos. 15-7 and 15-8.) On February 1, 2017, Defendant approved a medical accommodation request by Plaintiff to allow him "flexibility to work from home." (Def. Ex. J, ECF No. 15-10.) Defendant reports that it terminated Plaintiff in April 2017. (Def. Resp. at 7, ECF No. 15.)

On October 3, 2017, Plaintiff filed suit against Defendant alleging violations of the FLSA, MWHL, and MWPCL based on the Defendant's purported policy of paying all of its analysts a salary in order to avoid overtime wage requirements. (ECF No. 1 at ¶ 80-82.) Plaintiff subsequently filed a Motion for Conditional Certification (ECF No. 7) supported by

2

Mr. Brianas' Declaration executed on November 8, 2017 (ECF No. 7-2). In the Declaration, Mr. Brianas asserts that under the alleged policy, Defendant did not pay analysts overtime when Defendant's demands required them to work more than forty (40) hours per week. Specifically, Mr. Brianas claims that analysts "consistently worked as many as sixty (60) hours each week." (*Id.* at ¶¶ 5, 26.) Defendant filed a Response (ECF No. 15) supported by, *inter alia*, affidavits from three Brand House allocation analysts contain assertions at odds with Mr. Brianas' claims as to the scope of their duties and the hours worked (*see* Def. Exhibits C-E, ECF Nos. 15-3 through 15-5).

Defendant has filed an Answer (ECF No. 10) asserting various affirmative defenses, and discovery deadlines have been stayed pending resolution of the Motion for Conditional Certification. (ECF 20.)

## STANDARD OF REVIEW

Under the Fair Labor Standards Act, a plaintiff may bring an action on behalf of herself and other employees so long as the other employees are "similarly situated" to the plaintiff. 29 U.S.C. § 216(b); *see also Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008). As this Court has explained, Section 216 of the FLSA "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros*, 532 F. Supp. 2d at 771 (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)).

The decision to grant conditional certification is left to the court's broad discretion. *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010); *see also Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). This Court employs a two-step inquiry when deciding

3

whether to certify a collective action under the FLSA. *Syrja*, 756 F. Supp. 2d at 686; *Banks v. Wet Dog Inc.*, No. CIV.A. RDB-13-2294, 2015 WL 433631, at *1 (D. Md. Feb. 2, 2015).

"In the first stage, commonly referred to as the notice stage, the court makes a threshold determination of whether the plaintiff[] ha[s] demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members would be appropriate." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012) (internal quotations omitted). The central question "is whether [potential plaintiffs] are similarly situated in a way that suggests they were victims of a common policy, scheme, or plan that violated the FLSA." *Desmond v. Alliance, Inc.*, CCB-14-3499, 2015 WL 2165115, at *3 (D. Md. May 7, 2015). The Court may deny conditional certification if "the adjudication of multiple claims . . . would require the parties, the Court, and perhaps eventually a jury, to engage in an unmanageable assortment of individualized factual inquiries." *Syrja*, 756 F. Supp. 2d at 688. In making this determination, "[t]he courts . . . have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991)).

During the notice stage, the plaintiff must make "only a relatively modest factual showing" as to the existence of a common policy, scheme, or plan that violates the FLSA. *Butler*, 876 F. Supp. 2d at 566. The plaintiff "must submit evidence establishing at least a colorable basis for [her] claim that a class of 'similarly situated' plaintiffs exist[s]." *Quinteros*, 532 F. Supp. 2d at 772 (quoting *Severtson*, 137 F.R.D. at 266-267). The plaintiff, however, must provide "more than vague allegations with meager factual support." *Randolph v.*

4

*PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 576 (D. Md. 2014); *see also Bouthner v. Cleveland Const., Inc.*, No. RDB-11-0244, 2012 WL 738578, at *6 (D. Md. Mar. 5, 2012) ("Plaintiffs cannot rely on allegations alone."). Factual submissions may include "affidavits or other means." *Quinteros*, 532 F. Supp. 2d at 772.

During the second stage, following discovery, the court engages in a more stringent inquiry to confirm whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216. *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007)(internal citations omitted). The court then renders a final decision regarding the propriety of proceeding as a collective action. *Id.* The second, more "stringent" phase of collective action certification under the FLSA is often prompted by a motion to decertify, and thus is referred to as the "decertification stage." *Syrja*, 756 F. Supp. 2d at 686.

## DISCUSSION

Plaintiff argues that his pleading (ECF No. 1) and Declaration (ECF No. 7-2) provide sufficient factual support for this Court to conditionally certify a collective class of similarly situated plaintiffs. Mr. Brianas specifically seeks to represent employees "hired by Defendant to perform work as allocation analysts from the period of September 2014 to the present." (ECF No. 7-1 at 8.) Conditional certification of such a class requires the Plaintiff to demonstrate that he and the potential plaintiffs were victims of "a common policy, scheme, or plan that violated the FLSA." *Desmond*, CCB-14-3499, 2015 WL 2165115, at *3. While Plaintiff identifies a policy of classifying analysts as salaried employees in order to avoid overtime wage requirements, the alleged common policy must be supported by more than "meager factual support." *Randolph*, 7 F. Supp. 3d at 576. Plaintiff's factual support of this

5

alleged common policy should indicate that (a) Defendant classified analysts as salaried employees, (b) the analysts had duties similar to the Plaintiff's, and (c) Defendant required the analysts to work similar overtime hours. Defendant does not dispute that analysts were classified as salaried employees (*see e.g.,* ECF No. 15-3 at ¶ 5), but it disputes that all analysts shared similar duties and were required to work similar hours. On both fronts, Defendant argues that conditional certification is not warranted because individualized determinations would be required for each class member. (ECF No. 15 at 9 (citing *Syrja*, 756 F. Supp. 2d at 687).)

### I. Duties

Regarding analysts' duties, Plaintiff asserts in his Declaration that analysts' "tasks centered on using Defendant's software to determine inventory needs," including "filter[ing] data into usable formats" such as spreadsheets, lists, and other reports. (ECF No. 7-2 at ¶¶ 6-8.) Analysts in the Brand House and Factory House divisions utilized the same software. (*Id.* at ¶ 14.) According to Plaintiff, crafting these reports constituted the "focus" of analysts' work and "involved nothing more than data entry." (*Id.* at ¶¶ 10, 12.)

Other Brand House analysts have attested that their "primary duties included analyzing sales data" and "mak[ing] business decisions based on [that] analysis." (Kier Aff. at ¶ 8, Ex. C, ECF No. 15-3; *see also* Edgington Aff. at ¶ 6, ECF No. 15-5.) These analysts "had decision-making authority" without supervisory approval. (ECF No. 15-3 at ¶ 16.) The other analysts also aver that their "main duties centered around the analytical aspect" not on "data entry." (*Id.* at ¶ 19; *see also* ECF No. 15-4 at ¶ 19; ECF No. 15-5 at ¶ 19.) Finally, Defendant

notes that Plaintiff appears to lacks the personal knowledge necessary to make assertions about the work requirements for analysts in other divisions.

Both parties have submitted generalized, subjective descriptions of the analysts' "primary" duties. These submissions read more like a tutorial in effective resume writing than a contradictory factual record. The level of analyst discretion goes to the heart of the merits of this case,[2] but that question is distinct from whether the analysts are similarly situated for the purpose of conditional class certification. Notably, the affidavits submitted by the Defendant share numerous assertions as to the discretion, decision-making, and "[t]rue analysis" involved in the analysts' work (*see* ECF No. 15-3 at ¶¶ 8, 20; ECF No. 15-4 at ¶¶ 7, 20; ECF No. 15-5 at 6, 20), but the affidavits do not state or otherwise indicate that analysts' duties or tasks varied in any significant way. *See Robinson v. Empire Equity Group, Inc.*, 2009 WL 4018560, at *2 (D. Md. Nov. 18, 2009) (finding that "[t]he class members' positions 'need not be identical, only similar'") (quoting *Yeibyo v. E-Park of DC, Inc.*, 2008 WL 182502, at *7 (D. Md. Jan. 18, 2008)). At this stage, Plaintiff has carried his burden to show that analysts shared sufficiently similar job duties, but the analysis does not end there.

## II. Hours

In order to establish a common policy for the purpose of conditional certification, Plaintiff must also show that the analysts were subjected to similar working hour requirements. Plaintiff asserts that based at least in part on "inefficient software," the Defendant's "inefficient system caused [analysts] to work overtime consistently." (ECF No. 7-2 at ¶¶ 17, 20.) For example, "[analysts] were forced to work excessive hours to ensure all

---

[2] As Plaintiff notes, the applicability of the administrative exemption, *see* FLSA § 13(a)(1), 29 U.S.C. § 213(a)(1), is not before the Court at this stage. (*See* ECF No. 18 at 4.)

orders were accurate." (*Id.* at ¶ 21.) Plaintiff also points to "chronic understaffing" as another factor making it "impossible for [analysts] to complete . . . assignments within regular business hours." (*Id.* at ¶¶ 22, 24.) Plaintiff specifically states that the workload "required [analysts] to frequently work as many as eleven (11) hours each day" and analysts "would often work seven (7) days a week" and "as many as sixty (60) hours each week." (*Id.* at ¶¶ 24-26.)

Contrary to these assertions, analysts Tina Kier and Victoria Pappas declare that they did "not regularly work over forty (40) hours per week." (ECF No. 15-3 at ¶ 22; ECF No. 15-4 at ¶ 22.) Ms. Kier, Ms. Pappas, and another former analyst, Cody Edgington, all declare that they did "not regularly work weekends." (ECF No. 15-3 at ¶ 24; ECF No. 15-4 at ¶ 24; ECF No. 15-5 at ¶ 23.) The Defendant also states that "working from home was discouraged due to the team focus and collaborative nature" of the analysts' work. (Craig Aff. at ¶ 12, ECF No. 15-6.) The Defendant notes that it made an explicit exception to this policy for Mr. Brianas because he requested a medical accommodation "to work from home and have more time to think and react." (*Id.* at ¶ 19; *see also* Def. Ex. J, ECF No. 15-10.)

In his Reply (ECF No. 18), Plaintiff asserts that the affidavits and documents submitted by the Defendant are "irrelevant" and should be ignored. (*Id.* at 3, 8 (citing *Gerben v. O.T. Neighoff & Sons, Inc.*, No. MJG-17-1346, 2018 WL 461415 (D. Md. Jan. 18, 2018).) He also asserts that, if considered by the Court, Defendant's affidavits actually "confirm" that analysts worked overtime to meet the Defendant's demands. (ECF No. 18 at 5.) To the extent the Defendant's affidavits contradict Mr. Brianas' assertions, Plaintiff argues that this

Court should not resolve factual disputes or make credibility determinations at this stage. (*Id.* (citing *Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 825 (D. Md. 2012)).)

As an initial note, the *Gerben* decision discussed by the Plaintiff does not require this Court to automatically reject any and all factual submissions by the Defendant. In *Gerben*, the Court found the Defendant's submissions to be irrelevant because the facts related either to the merits or to a matter immaterial to the alleged company policy. 2018 WL 461415, at *4. In this case, however, Defendant's factual submissions bear on the question of whether analysts were subjected to a common policy requiring them to work overtime. To the extent Plaintiff seeks to rely on the Defendant's affidavits as "confirmation" of his overtime allegations, the affidavits provide no such support. Rather, the affidavits state, "I do not regularly work over forty (40) hours per week. . . I do not regularly work from home." (ECF No. 15-3 at ¶ 22; ECF No. 15-4 at ¶ 22.)

This Court need not resolve factual disputes nor make credibility determinations to find that Plaintiff's submissions, taken alone, do not sufficiently support his allegation that other analysts were subjected to a common policy regarding working overtime. Plaintiff alleges generally that other analysts "consistently" worked overtime, but he does not name a single analyst he observed, or spoke to about, working such overtime. Nor does he identify an exemplary incident during which he observed other analysts working similar hours. Plaintiff's blanket assertion that other analysts' consistently worked similar schedules is of such a conclusory nature that this Court, in exercising its discretion, need not accept it as true. While not required, Brianas' failure to name a single analyst working similar hours underscores the conclusory nature of his allegations. *Cf. Gerben*, 2018 WL 461415 at *3

(relying on declaration of a second employee as corroboration of plaintiff's allegations).[3] Put simply, Plaintiff provides no more than "meager factual support." *Randolph*, 7 F. Supp. 3d at 576.

Defendant's factual submissions regarding Brianas' Performance Improvement Plan and his medical accommodation further undermine Plaintiff's attempt to preliminarily establish a policy common to all analysts. Plaintiff does not dispute that – due in part to a "lack of urgency" – he was placed on a Performance Improvement Plan (ECF No. 15 at 6; *see also* Ex. H, ECF No. 15-8), nor does he dispute that he requested a medical accommodation to have more time to complete tasks and to work from home (*see* ECF No. 15-6 at ¶ 19; *see also* Def. Ex. J, ECF No. 15-10). If anything, the undisputed facts reveal a policy that analysts were discouraged from working from home (ECF No. 15-6 at ¶ 12), and that Plaintiff benefited from a uniquely flexible schedule. While this Court stated in *Gerben* that factual disputes alone "do not negate the appropriateness of court-facilitated notice," *Id.* 2018 WL 461415 at *4 (quoting *Quinteros*, 532 F. Supp. 2d at 772), Plaintiff here does not dispute facts indicating that Defendant tailored the Plaintiff's work requirements to meet his medical needs and to address his performance issues. In such a situation, this Court is mindful that "[t]he courts . . . have a responsibility to avoid the 'stirring up' of litigation

---

[3] Defendant also argues that court-facilitated notice would be futile as Brianas is the only person who has responded to Plaintiff counsel's independent efforts to identify class action plaintiffs. (*See* ECF No. 15 at 2 n.2.; Def. Ex. A, ECF No. 15-1.) The Defendant's factual assertion on this front lacks clarity (e.g., the investigation letters were addressed to "Customer Service Representative[s]" rather than "Allocation Analysts"), and Judge Ellen L. Hollander of this Court recently warned against requiring Plaintiffs to identify additional individuals interested in participating in the case, *Aytch v. Trulife Health Servs., LLC*, No. ELH-17-2769, 2018 WL 1784461, at *4 (D. Md. Apr. 12, 2018). This Court notes, however, that Plaintiff must at least show that a class of similarly situated individuals *exists*, even if there are no indications of their *interest* in participating. A plaintiff's ability to name even one similarly situated individual is probative of – though not necessarily required to show – the existence of such a class.

through unwarranted solicitation." *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991)).

The Plaintiff has therefore failed to carry his burden to establish that this Court should facilitate class-wide notice in order for this case to proceed as a collective action. In the exercise of its broad discretion, the Court will DENY Plaintiff's Motion for Conditional Certification (ECF No. 7).

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Conditional Certification (ECF No. 7) is DENIED. Accordingly, this case will proceed as an individual claim for overtime wages under the FLSA, MWHL, and MWPCL.

A separate Order follows.

Dated: May 11, 2018

/s/ Richard D. Bennett
Richard D. Bennett
United States District Judge